98 F.3d 1346
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
James LANE, Denise Lien, Carl Offenheiser, and the class of
similarly situated persons who worked aboard the
F/T Ocean Rover, Plaintiffs-Appellants,
and
James S. Valentine, Plaintiff,
v.
BIRTING FISHERIES, INC., OCEAN ROVER F/T, Official Number
552100, her engines, tackle, equipment,
appurtenances, freights and cargo, In
Rem, Defendants-Appellees.
 No. 95-35847.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted July 11, 1996.
Decided Oct. 1, 1996.
 
 Before: REAVLEY,* REINHARDT and WIGGINS, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 James Lane and others, representing a class of 209 crewmembers employed by Birting Fisheries on its fishing vessel Ocean Rover, sued for underpayment of wages. After a bench trial the district court found the facts in favor of Birting and dismissed the claims. We affirm.
 
 
 3
 The contract of employment provided that each crewmember would be paid a proportionate share of the total price or value of the fish products of each trip on which that person worked. Birting estimated that price within six working days after the end of the trip and settled with the crew by that computation. Birting did not by that time know the ultimate revenue it would receive for the fish, and could not either know the price or be assured of the final acceptance for quality by the buyer. Necessarily, Birting had to estimate what the ultimate total price or value would be.
 
 
 4
 The plaintiffs argue that the "sales" price is the price agreed to be paid by the buyer and that Birting was not entitled to take into account, in estimating that sales price or value, the possibility that the buyer might return some fish product. The evidence showed that Birting had cause to doubt that some of its product would be acceptable to the buyer during these years, and we learn that fish products may be rejected for months after the original trade. We agree with the district court that the contract should be construed to provide that the ultimate price Birting was to receive was the object to be estimated, and that the contract entitled Birting to take all factors affecting that ultimate price into consideration in estimating the sum for the wage allotments.
 
 
 5
 Plaintiffs next argue that the contract was modified to require Birting to pay crew shares of the actual sale value when, ultimately, the actual revenue exceeded the original estimate. On one occasion a subsequent adjustment was made, in the interest of the crew, in accord with a letter written by the Birting Controller. The district court correctly rejected this argument. The letter did not purport to modify the employment contract.
 
 
 6
 The question then becomes whether Birting made an honest, good faith, reasonable estimate of the sale price or value of the trip products. Plaintiffs contend that the district court did not test the conduct of Birting by the appropriate standard of duty owed to its seafaring employees. We agree that the duty owed to seamen is a high one, "analogous" to that of a fiduciary. But we see no issue here between the parties or with the decision of the district court. Birting insists that it has treated the crewmembers' interests as equal to its own. While the district court did not use those words, it found that Birting complied honestly and in good faith with the contract, paying each crewmember the wages to which each plaintiff was entitled by virtue of the contract of employment. That finding satisfies the obligation owed by Birting.
 
 
 7
 Did the evidence support that finding of the court? We conclude that it did. We can understand why plaintiffs might hear about invoices and offers for fish product, higher than Birting's estimates and sometimes known to Birting before it made the estimates, and think that they had been underpaid. But these apparent discrepancies were explained by Birting management, especially by general manager Odd-Bjorn Huse. The principal fact, with which Birting had to contend, was its conflict with Nippon Suisan (or Nissui). Nissui had contracts with Birting, and was its sole purchaser until 1993. They had a stormy relationship. Birting thought Nissui was grading its product too low, and too cheap. Nissui brought suit against Birting for some $8 million and Birting counterclaimed for almost $2 million owing on the account. In late 1993 the suit forced Birting into Chapter 11 for protection, and to settle the matter Birting forgave the debt. Invoices and offers to and from Nissui during this period were not what they seemed. Nor did the similar documents exchanged with new potential customers insure ultimate realization of the stated amounts.
 
 
 8
 Odd-Bjorn Huse took the disputed trip settlements, one by one, and explained the effort and reasoning by which values were estimated for the wages of the crew. The district court found Huse to be credible. That resolves the issue and we cannot say there was error.
 
 
 9
 AFFIRMED.
 
 
 
 *
 Honorable Thomas M. Reavley, Senior United States Circuit Judge for the United States Court of Appeals, Fifth Circuit, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3